EILEEN T. GALLAGHER, J., DISSENTING:
 

 {¶ 25} I respectfully dissent from the majority's decision to affirm Nunez's convictions because I think the trial court should have excluded excess evidence of the August 27, 2015 domestic violence incident pursuant to Evid.R. 403(A). In my view, the surveillance video of the August 27, 2015 incident as well as the photographs of the injuries K.K. sustained as a result of that incident were of little to no probative value, were unfairly prejudicial, and deprived Nunez of a fair trial.
 

 {¶ 26} Evid.R. 403 specifies the circumstances under which the trial court is required or permitted to exclude evidence. As relevant here, Evid.R. 403(A) provides that the trial court must exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Thus, even if evidence of a defendant's past conduct is relevant and admissible under Evid.R. 404(B), the court must nevertheless exclude the evidence if its probative value is substantially outweighed by the danger of unfair prejudice.
 
 State v. Williams
 
 ,
 
 134 Ohio St.3d 521
 
 ,
 
 2012-Ohio-5695
 
 ,
 
 983 N.E.2d 1278
 
 , ¶ 20.
 

 {¶ 27} Nunez argued in his appellate brief that the state presented an overabundance of evidence regarding the August 27, 2015 domestic violence incident, and that the piling on of the evidence offered no additional probative value and was "extremely prejudicial." (Appellant's Brief p. 4.) He supplemented his argument with additional authority provided in
 
 State v. Creech
 
 ,
 
 150 Ohio St.3d 540
 
 ,
 
 2016-Ohio-8440
 
 ,
 
 84 N.E.3d 981
 
 . I disagree with the majority's conclusion that
 
 Creech
 
 is inapplicable to Nunez's arguments since
 
 Creech
 
 clarifies the analysis of Evid.R. 403, and Evid.R. 403 is "the threshold test of relevancy."
 
 State v. Moore
 
 , 8th Dist. Cuyahoga No. 93042,
 
 2010-Ohio-518
 
 ,
 
 2010 WL 547502
 
 , ¶ 27.
 

 {¶ 28} In
 
 Creech
 
 , the court explained that the probative value of the evidence is calculated by comparing it to evidentiary alternatives:
 

 Probative value is measured partially by the relative scarcity of evidence on the same issue. * * * That is, if the state offers evidence for which there is an evidentiary alternative that has substantially similar or greater probative value but is less prejudicial, the probative value of the state's evidence must be discounted. The danger of unfair prejudice is then weighed against this reduced probative value.
 

 Id.
 
 at ¶ 22, citing
 
 Old Chief v. United States
 
 ,
 
 519 U.S. 172
 
 , 185,
 
 117 S.Ct. 644
 
 ,
 
 136 L.Ed.2d 574
 
 (1997). For purposes of proving a prior conviction, the court further explained that
 

 "there is no cognizable difference between the evidentiary significance of an admission and of the legitimately probative component of the official record the prosecution would prefer to place in evidence." * * * In terms of probative value, a stipulation and the official record are equal. So when weighing the probative against the prejudicial, the distinguishing characteristic between the two types of competing evidence is that one carries inherent risk and the other does not.
 

 Id.
 
 at ¶ 30, quoting
 
 Old Chief
 
 at 191,
 
 117 S.Ct. 644
 
 . The court in
 
 Creech
 
 concluded that the state's evidence, which established not only the name but also the nature of Creech's prior convictions, created a risk of unfair prejudice to him that warranted a reversal of his convictions.
 
 Id.
 
 at ¶ 36.
 

 {¶ 29} Here, the state called Officer Raymond Halas ("Halas") of the Lakewood
 Police Department as its first witness. The state called Halas, who responded to the August 27, 2015 domestic violence incident, to identify photographs of the injuries K.K. sustained as a result of that incident. Defense counsel objected to the photographs, stating "[W]e are willing to stipulate." (Tr. 138.) Defense counsel also asserted that the photographs served no purpose but to "prejudice" the jury. (Tr. 138.) The trial court dismissed the objection, stating: "They don't have to accept your stipulation." (Tr. 138.)
 

 {¶ 30} Although neither the state nor the court is required to accept a defendant's stipulation, the court must weigh the probative value of the evidence against the risk of unfair prejudice. Evid.R. 403. The state offered the photographs of the injuries K.K. sustained on August 27, 2015, as evidence of modus operandi to prove that Nunez caused K.K.'s injuries on January 24, 2016. (Tr. 139.) However, since Halas was the state's first witness, K.K. had not yet testified. Although there was some indication that K.K. would be a hostile witness, the state should have given her the opportunity to identify Nunez as the individual who assaulted her on January 24, 2016, before introducing highly prejudicial photographs of injuries from an unrelated incident.
 

 {¶ 31} Moreover, both the state and the court were aware that the state was going to introduce recorded jail conversations in which Nunez instructed K.K. to claim she had no recollection of the January 24, 2016 assault because she was intoxicated. They also knew the state was going to introduce medical records from the hospital in which K.K. identified Nunez as her attacker. These evidentiary alternatives to the photographs were sufficient to identify Nunez as the perpetrator who caused her injuries on January 24, 2016. The photographs were not necessary to prove Nunez's identity. Therefore, under the analysis described in
 
 Creech
 
 , they contained no probative value and served only to inflame the jury.
 

 {¶ 32} The state also called Detective Donald Mladek ("Mladek") for the purpose of playing the surveillance video of the August 27, 2015 assault for the jury. But again, Nunez was not on trial for the August 27, 2015 domestic violence incident. Indeed, he pleaded guilty to that offense, and Mladek testified to that fact. (Tr. 288.) Yet, the surveillance video shows Nunez throwing K.K., who was visibly pregnant at the time, into a door jam in the lobby of the Marine Towers apartment building. Again, defense counsel made a timely objection to the video:
 

 My objection is that this has nothing to do with this case. * * * They don't have to show how the incident happened, what happened. As far as I'm concerned, it's already been established what they have to establish as part of this cause action.
 

 (Tr. 291.)
 

 {¶ 33} The state argued the surveillance video was necessary to establish that K.K. mischaracterized the August 27, 2015 incident as an accident instead of an intentional act of violence. (Tr. 292.) In other words, the state introduced the surveillance video to impeach K.K.'s credibility. However, K.K. initially admitted that the August 27, 2015 incident was an intentional assault, but subsequently changed her testimony. Her inconsistent testimony, by itself, cast doubt on her credibility.
 

 {¶ 34} Furthermore, the state sufficiently discredited K.K.'s testimony by playing the recorded jail-phone conversations for the jury and reading K.K.'s prior written statement to police. Indeed, K.K. followed the instructions Nunez gave her in the recording and testified that she had no memory of the January 24, 2016 assault
 because she was intoxicated. K.K.'s prior written statement to police also contradicted her trial testimony, while also explaining how Nunez caused her injuries.
 

 {¶ 35} Moreover, Nunez's identity as the perpetrator was further established by the emergency room physician and physician's assistant who tended to K.K.'s injuries on January 24, 2016. They testified that K.K. identified Nunez as the individual who caused her injuries and that she was not intoxicated on the night of the January 24, 2016 assault.
 

 {¶ 36} Thus, the surveillance video was not necessary to impeach K.K.'s credibility. Nor was it necessary to establish the fact of Nunez's prior domestic violence conviction that resulted from that incident. Detective Mladek testified that during the course of his investigation, he discovered that Nunez had two prior domestic violence convictions, including one in which Nunez pleaded guilty to domestic violence in Lakewood, Ohio in October 2015. Mladek authenticated the journal entries of conviction and they were admitted into evidence.
 

 {¶ 37} In light of the many evidentiary alternatives offered to impeach K.K.'s credibility and to establish the fact of Nunez's prior conviction, the surveillance video and photographs of K.K.'s injuries on August 27, 2015, offered no probative value, but carried an extreme risk of unfair prejudice. In accordance with
 
 Creech
 
 and the mandate set forth in Evid.R. 403(A), I would find the unfair prejudice caused by this evidence was substantial enough to deprive Nunez of a fair trial.